IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-00441-01-CR-W-GAF |
| | ) | |
| VERNA CHERYL WOMACK, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendant Verna Cheryl Womack's Motion to Dismiss Indictment for Lack of Venue (doc #74). The government has filed a brief in opposition (doc #82) and defendant has filed a reply brief (doc #90). For the reasons set forth below, it is recommended that defendant's motion to dismiss be denied.

I. INTRODUCTION

On December 12, 2013, the Grand Jury returned a ten count indictment against Verna Cheryl Womack. The indictment provides in part:

**INTRODUCTION**

1. Beginning in or about 1996, and continuing to the date of this indictment, Defendant VERNA CHERYL WOMACK … corruptly endeavored, in the Western District of Missouri, and elsewhere, to obstruct and impede the due administration of the internal revenue laws of the United States. As part of her endeavors, WOMACK opened a series of bank accounts and organized a series of nominee companies and trusts in the Cayman Islands to conceal a portion of her income from the IRS. At all times, WOMACK exercised control over the nominee companies and trusts, and they were maintained for her financial benefit. When necessary to maintain her control, WOMACK appointed family members and employees as directors of the nominee companies and trusts, sometimes without their knowledge. As part of her corrupt endeavors, WOMACK repeatedly failed, year after year, to report her financial interests in her nominee companies

and trusts to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.

2. As part of her corrupt endeavors, WOMACK established at least 19 accounts at the Bank of Butterfield and Caledonian Bank in the Cayman Islands in her own name, and in the name of her various nominee companies and trusts. For at least the calendar years 2005 through 2008, WOMACK failed to report her financial interest and signatory authority over all of the financial accounts in the Cayman Islands that she had an interest in or signatory authority over to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.

3. For the calendar years 2005 through 2008, WOMACK maintained balances of between $40,964.00 and $173,541.08 in one of the Bank of Butterfield accounts, an interest-bearing account that she maintained in her own name. WOMACK had signature authority on that account, and she corresponded in person and via e-mail with the bank concerning disbursements to and from that account. Despite her custody and control of that account, WOMACK repeatedly failed, year after year, to report her financial interests in her Bank of Butterfield interest-bearing account to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.

4. WOMACK's corrupt endeavors to conceal income from the IRS included the use of a nominee company in the Cayman Islands called Lucy Limited, for which she established at least two separate accounts at the Bank of Butterfield. One example of how WOMACK attempted to use Lucy Limited to conceal her income was the March 15, 2008, sale of a portion of her personal wine collection at an auction house in New York, New York. Following the sale, WOMACK personally directed the auction house to wire transfer a total of $1,613,899.89 to a Lucy Limited account at the Bank of Butterfield that WOMACK controlled. WOMACK then employed a number of false and fraudulent business agreements, that appeared to be arm's length transactions but were in fact WOMACK's self-dealing, resulting in wires of those proceeds back to the United States for WOMACK's personal use. She did not disclose her control of Lucy Limited or the existence of its bank account to the IRS, and she did not properly report the income she derived from that sale – at least $851,188.00 – on her individual tax return as required by the internal revenue laws of the United States.

5. Further obstructing and impeding the administration of the internal revenue laws of the United States, WOMACK repeatedly lied to employees of the United States about her interests in Cayman Island businesses, trusts and financial accounts. On one occasion, WOMACK lied to two FBI agents, falsely claiming that she did not own any foreign businesses and that those businesses were owned by other investors, when she knew that no other investors existed. On a second

2

occasion, WOMACK repeatedly lied during a sworn deposition to a trial attorney from the United States Department of Justice about her financial interests in the Cayman Islands.

6. The United States alleges that during the period charged in this indictment, WOMACK's schemes to interfere with the administration of the internal revenue laws, including but not limited to her corrupt endeavors using Cayman Island nominees and financial accounts alleged in this indictment, caused a total tax loss in excess of $7,000,000.00.

## BACKGROUND

\* \* \*

9. Beginning in our [sic] about 1981, WOMACK owned and operated a number of businesses associated with selling liability insurance policies to independent truck drivers, including the National Association of Independent Truckers (the NAIT companies). WOMACK sold the NAIT companies in or about April 2002 to a different company in the business of selling liability insurance policies for an amount exceeding $35,000,000.00.

\* \* \*

11. At various times prior to and continuing after the sale of the NAIT companies, WOMACK owned and operated, in whole or in part, various domestic companies that were not related to the insurance business. These companies included, but were not limited to, VCW Holding Company, LLC (VCW Holding). At various times, WOMACK maintained offices four [sic] her domestic companies in Kansas City, Missouri, and in Johnson County, Kansas. At various times, WOMACK maintained various business checking and investment accounts for her domestic companies, including various business checking and investment accounts at Missouri Bank & Trust, in Kansas City, Missouri.

\* \* \*

## COUNT ONE

**(Attempts to Interfere with Administration of Internal Revenue Laws)**

29. The factual allegations in paragraphs 1 through 28 are incorporated herein by reference.

30. Beginning in or about 1996, and continuing to the date of this indictment, in the Western District of Missouri and elsewhere, the defendant did

3

corruptly endeavor to obstruct and impede the due administration of the internal revenue laws of the United States by the following conduct:

* * *

36. On or about March 15, 2008, WOMACK sold and caused to be sold at auction at an auction house in New York, New York, approximately half of the wine stored in the basement of her residence in Mission Hills, Kansas. WOMACK attempted to use her nominee company Lucy Limited and its financial accounts at the Bank of Butterfield to conceal the revenues and profits she derived from the sale of the wine as follows:

  a. Beginning on or about April 21, 2008, WOMACK caused … wire transfers, representing the revenues from the wine auction, to be made from the auction house to the Lucy Limited '255 account at the Bank for [sic] Butterfield ….

* * *

  c. On or about April 8, 2008, WOMACK caused a wire transfer of $298,957.17, derived from revenues of the wine auction, to be made from the Lucy Limited '255 account at Bank of Butterfield to an account in the name of VCW Holding at Missouri Bank & Trust, in Kansas City, Missouri. WOMACK falsely and fraudulent represented in Lucy Limited's financial statements that this wire transfer was a 20% management fee due to her from Lucy Limited.

  d. On or about October 21, 2008, WOMACK created and caused to be created a false and fraudulent document purporting to be a lease agreement between WOMACK and Lucy Limited. Although not created until 2008, the false and fraudulent lease agreement stated that Lucy Limited would lease the wine cellars in the basement of WOMACK's Mission Hills, Kansas, residence for $25,000.00 per year beginning in 1995 and continuing through at least 2009.

  e. On or about October 22, 2008, WOMACK caused a $350,000.00 wire transfer, derived from the revenues of the wine auction, to be made from the Lucy Limited '255 account at the Bank of Butterfield to an account in the name of VCW Holding at Missouri Bank & Trust, in Kansas City, Missouri. WOMACK falsely and fraudulently represented in Lucy Limited's financial statements that this wire transfer was payment for rent due under the lease agreement between WOMACK and Lucy Limited for the years 1995 through 2008.

4

f. On or about January 6, 2009, WOMACK caused a $25,000.00 wire transfer, derived from the revenues of the wine auction, to be made from the Lucy Limited '255 account at the Bank of Butterfield to an account in the name of VCW Holding at Missouri Bank & Trust, in Kansas City, Missouri. WOMACK falsely and fraudulently represented in Lucy Limited's financial statements that this wire transfer was payment for rent due under the lease agreement between WOMACK and Lucy Limited for the year 2009.

g. As a result of her efforts to disguise the self-dealing nature of these transactions, WOMACK did not report the income she derived from the sale of the wine on her U.S. Individual Tax Return, Form 1040, for the calendar year 2008.

\* \* \*

39. On or about December 15, 2008, WOMACK was interviewed by two FBI Special Agents. During that interview, WOMACK knowingly made numerous false and fraudulent statements …

40. At the end of the interview with the two FBI Special Agents that took place on or about December 15, 2008, WOMACK was provided a form that stated both that "[t]he Agents listed below introduced themselves to me and told me that they are conducting a federal criminal investigation regarding bank fraud, wire fraud and/or tax evasion" and that "I have been advised that it is a separate Federal felony to knowingly and willfully make any materially false, fictitious, or fraudulent statement or representation during this interview." WOMACK initialed beside both of those statements, signed the form, and dated it 956 am 12/15/08." Later that day, and to conceal her prior false and fraudulent statements to the agents, WOMACK made a handwritten annotation to the form stating "regarding Brandy Wheeler VCW 12/15/08" and caused the annotated form to be transmitted to the agents at their office in Kansas City, Missouri.

41. On or about May 19, 2009, in Kansas City, Missouri, WOMACK testified under oath in a deposition by a trial attorney for the United States Department of Justice, Tax Division, regarding a lawsuit under the internal revenue laws of the United States then pending in the Western District of Missouri that sought to enjoin a third party from providing tax advice. During that deposition, WOMACK knowingly made numerous false and fraudulent statements ….

\* \* \*

All in violation of 26 U.S.C. § 7212(a).

5

## COUNTS TWO through TEN

45. The factual allegations in paragraph 1 through 28 and 31 through 44 are incorporated herein by reference.

46. On or about May 9 [sic], 2009, in Kansas City, in the Western District of Missouri, the defendant VERNA CHERYL WOMACK, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Department of the Treasury and the United States Department of Justice, did voluntarily and intentionally make the false and fraudulent statements of material fact corresponding to each count below, while knowing those statements to be false and fraudulent at the time she made them.

[listing of alleged Material False Statements]

All in violation of 18 U.S.C. § 1001(a)(2).

(Indictment (doc #1))

The statutes under which defendant Womack has been charged, 26 U.S.C. § 7212(a) and 18 U.S.C. § 1001(a)(2), provide in part:

**§ 7212. Attempts to interfere with administration of internal revenue laws**

**(a) Corrupt or forcible interference.** –Whoever corruptly … endeavors to … impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly … obstructs or impedes, or endeavors to obstruct or impeded, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both ….

26 U.S.C. § 7212(a).

**§ 1001. Statement or entries generally**

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--

\* \* \*

(2) makes any materially false, fictitious, or fraudulent statement or representation …

6

Case 4:13-cr-00441-GAF   Document 138   Filed 11/25/15   Page 6 of 10

* * *

shall be fined under this title, imprisoned not more than 5 years ….

18 U.S.C. § 1001(a)(2).

## II. DISCUSSION

Defendant Womack argues that the indictment should be dismissed for lack of venue under Rule 12(b)(3)(B)[1] of the Federal Rules of Criminal Procedure. (Defendant Verna Cheryl Womack's Motion to Dismiss Indictment for Lack of Venue (doc #74) at 1) More specifically, defendant argues that the indictment fails to allege that defendant engaged in any offense conduct in the Western District of Missouri, with the exception of the deposition testimony which defendant argues is an improper attempt by the government to manufacture venue in Missouri.[2] (Id. at 2) Defendant further argues that the government is prevented from relying on statements from the deposition for venue because they are the fruit of an unconstitutional search of stolen documents and a protective order[3] prevents the use of the deposition testimony. (Id.)

The United States Constitution provides that a defendant has the right to trial in the "district wherein the crime shall have been committed." U.S. Const. amend. VI. The Court notes that there is no summary judgment procedure in federal criminal cases. See United States v. Jensen,

---

[1] The Court finds that defendant actually seeks dismissal under Rule 12(b)(3)(A)(i), which concerns "a defect in instituting the prosecution, including … improper venue."

[2] Defendant withdrew the manufactured venue argument at the hearing held on July 24, 2015. (Tr. VIII-3-4)

[3] The Court notes that the subject protective order provides: "This order … does not prohibit or otherwise restrict Plaintiff from disclosing information protected by this order that is relevant to any civil or criminal action to any federal or state agency with authority to enforce laws regulating any activity relating to the requested information." (United States v. Allen R. Davison, Case No. 08-00120-CV-W-GAF, Stipulated Protective Order Concerning Subpoenaed Documents and Information (doc #35) at 7)

7

93 F.3d 667, 669 (9th Cir. 1996); United States v. Viskup, No. 1:12-CR-263-ODE-JFK, 2013 WL 6858906, at *9 (N.D. Ga. Dec. 30, 2013); United States v. Williams, No. 1:10-CR-150-TCB-AJB, 2010 WL 3488131, at *3 (N.D. Ga. Aug. 2, 2010). While Rule 12 allows a defendant to move to dismiss an indictment prior to trial on the basis of improper venue, it requires that "the motion can be determined without a trial on the merits." The sufficiency of a criminal indictment is determined from its face. See Jensen, 93 F.3d at 669; Williams, 2010 WL 3488131, at *3. The allegations of the indictment must be taken as true. See United States v. Razo, No. 1:11-CR-00184-JAW, 2012 WL 5874667, at *5 (D. Me. Nov. 20, 2012); United States v. Mendoza, 108 F.3d 1155, 1156 (9th Cir.), cert. denied, 522 U.S. 938 (1997). "If there is a facially sufficient indictment, the Court cannot make venue determinations based on extrinsic evidence in deciding a pre-trial motion. … This is particularly true where, as here, the Defendant's factual contentions on venue are interwoven with the evidence in the case itself." Razo, 2012 WL 5874667, at *5 (citation omitted). Accord United States v. Snipes, 611 F.3d 855, 866 (11th Cir. 2010)("it would not have been proper for the district court to find the appropriate venue in a pretrial evidentiary hearing").

While the vast majority of cases cited by defendant in support of her motion to dismiss dealt with venue determinations made at and after trial, defendant did cite one case, United States v. Cabrales, 524 U.S. 1 (1998), in which a motion to dismiss for lack of venue was granted pre-trial. However, in that case, the subject counts "include[d] no act committed by Cabrales in Missouri." Id. at 5. Thus, venue could be determined from the face of the indictment. In contrast to the Cabrales case, the indictment in the instant case does include acts committed by defendant Womack in Missouri.

Count One of the indictment before this Court provides that "<u>in the Western District of Missouri</u> and elsewhere, the defendant did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws of the United States by the following conduct:" (emphasis supplied) The indictment then lists various conduct including wire transfers made by defendant Womack to an account at a bank in Kansas City, Missouri, relating to alleged fraudulently concealed revenues and profits, an annotated form defendant transmitted to FBI agents at their office in Kansas City, Missouri, which was allegedly made to conceal defendant's prior false and fraudulent statements to the agents, and false and fraudulent statements defendant made at a deposition held in Kansas City, Missouri. Counts Two through Ten provide that "<u>in Kansas City, in the Western District of Missouri</u>, the defendant … in a matter within the jurisdiction of the executive branch of the Government of the United States … did voluntarily and intentionally make … false and fraudulent statements of material fact … while knowing those statements to be false and fraudulent at the time she made them." (emphasis supplied) Inasmuch as the indictment in this case alleged that the offense occurred within the Western District of Missouri, the indictment is facially sufficient to support venue in the Western District of Missouri and defendant Womack's motion to dismiss must fail.

The government bears the burden at trial of proving venue. See <u>United States v. Razo</u>, No. 1:11-CR-00184-JAW, 2012 WL 5874667, at *4 (D. Me. Nov. 20, 2012); <u>United States v. Ohle</u>, 678 F.Supp.2d 215, 231 (S.D.N.Y. 2010). Defendant's pending motions to suppress may impact the evidence that the government will have available for use at trial. Whether the government will be able to meet its burden of proving venue at trial remains to be seen. Defendant Womack is free to renew her venue challenges at the close of the government's case in a motion for a judgment of acquittal.

## III. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant Verna Cheryl Womack's Motion to Dismiss Indictment for Lack of Venue (doc #74).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                 */s/ Sarah W. Hays*
                                                 SARAH W. HAYS
                                    UNITED STATES MAGISTRATE JUDGE