IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-00441-01-CR-W-GAF |
| | ) | |
| VERNA CHERYL WOMACK, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendant Verna Cheryl Womack's Motion to Dismiss the Indictment Pursuant to Fed.R.Crim.P. 12(b)(3)(B) (docs #72 and #73).[1]  For the reasons set forth below, it is recommended that this motion be denied.

I.   INTRODUCTION

On December 12, 2013, the Grand Jury returned a ten count indictment against Verna Cheryl Womack.   The indictment provides in part:

**INTRODUCTION**

> 1.     Beginning in or about 1996, and continuing to the date of this indictment, Defendant VERNA CHERYL WOMACK … corruptly endeavored, in the Western District of Missouri, and elsewhere, to obstruct and impede the due administration of the internal revenue laws of the United States.  As part of her endeavors, WOMACK opened a series of bank accounts and organized a series of nominee companies and trusts in the Cayman Islands to conceal a portion of her income from the IRS.  At all times, WOMACK exercised control over the nominee companies and trusts, and they were maintained for her financial benefit. When necessary to maintain her control, WOMACK appointed family members

---

[1]Doc #72 is a redacted version of the motion and doc #73 is an unredacted version filed under seal. Defendant states she has redacted portions of the motion in accordance with the terms of the Stipulated Protective Order Concerning Subpoenaed Documents and Information (doc #35) entered by Judge Fenner in United States v. Allen R. Davison, No. 08-00120-CV-W-GAF.

and employees as directors of the nominee companies and trusts, sometimes without their knowledge. As part of her corrupt endeavors, WOMACK repeatedly failed, year after year, to report her financial interests in her nominee companies and trusts to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.

2. As part of her corrupt endeavors, WOMACK established at least 19 accounts at the Bank of Butterfield and Caledonian Bank in the Cayman Islands in her own name, and in the name of her various nominee companies and trusts. For at least the calendar years 2005 through 2008, WOMACK failed to report her financial interest and signatory authority over all of the financial accounts in the Cayman Islands that she had an interest in or signatory authority over to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.

3. For the calendar years 2005 through 2008, WOMACK maintained balances of between $40,964.00 and $173,541.08 in one of the Bank of Butterfield accounts, an interest-bearing account that she maintained in her own name. WOMACK had signature authority on that account, and she corresponded in person and via e-mail with the bank concerning disbursements to and from that account. Despite her custody and control of that account, WOMACK repeatedly failed, year after year, to report her financial interests in her Bank of Butterfield interest-bearing account to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.

4. WOMACK's corrupt endeavors to conceal income from the IRS included the use of a nominee company in the Cayman Islands called Lucy Limited, for which she established at least two separate accounts at the Bank of Butterfield. One example of how WOMACK attempted to use Lucy Limited to conceal her income was the March 15, 2008, sale of a portion of her personal wine collection at an auction house in New York, New York. Following the sale, WOMACK personally directed the auction house to wire transfer a total of $1,613,899.89 to a Lucy Limited account at the Bank of Butterfield that WOMACK controlled. WOMACK then employed a number of false and fraudulent business agreements, that appeared to be arm's length transactions but were in fact WOMACK's self-dealing, resulting in wires of those proceeds back to the United States for WOMACK's personal use. She did not disclose her control of Lucy Limited or the existence of its bank account to the IRS, and she did not properly report the income she derived from that sale – at least $851,188.00 – on her individual tax return as required by the internal revenue laws of the United States.

5. Further obstructing and impeding the administration of the internal revenue laws of the United States, WOMACK repeatedly lied to employees of the United States about her interests in Cayman Island businesses, trusts and financial

accounts. On one occasion, WOMACK lied to two FBI agents, falsely claiming that she did not own any foreign businesses and that those businesses were owned by other investors, when she knew that no other investors existed. On a second occasion, WOMACK repeatedly lied during a sworn deposition to a trial attorney from the United States Department of Justice about her financial interests in the Cayman Islands.

6. The United States alleges that during the period charged in this indictment, WOMACK's schemes to interfere with the administration of the internal revenue laws, including but not limited to her corrupt endeavors using Cayman Island nominees and financial accounts alleged in this indictment, caused a total tax loss in excess of $7,000,000.00.

\* \* \*

## COUNT ONE

**(Attempts to Interfere with Administration of Internal Revenue Laws)**

29. The factual allegations in paragraphs 1 through 28 are incorporated herein by reference.

30. Beginning in or about 1996, and continuing to the date of this indictment, in the Western District of Missouri and elsewhere, the defendant did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws of the United States by the following conduct:

[failing to acknowledge any interest in or signature authority over any foreign financial accounts on defendant's U.S. Individual Tax Return, Form 1040, for the calendar years 2005, 2006, 2007 and 2008; failure to file with the IRS a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 (FBAR) for the calendar years 2005, 2006, 2007 and 2008; and filing an inadequate FBAR for the calendar year 2009]

\* \* \*

35. In or about March 2008, WOMACK provided a list of her financial accounts to an FBI Special Agent in relation to a separate federal criminal investigation. WOMACK's list of her accounts did not include any of her foreign bank accounts.

36. On or about March 15, 2008, WOMACK sold and caused to be sold at auction at an auction house in New York, New York, approximately half of the wine stored in the basement of her residence in Mission Hills, Kansas.

3

WOMACK attempted to use her nominee company Lucy Limited and its financial accounts at the Bank of Butterfield to conceal the revenues and profits she derived from the sale of the wine ….

\* \* \*

  g. As a result of her efforts to disguise the self-dealing nature of these transactions, WOMACK did not report the income she derived from the sale of the wine on her U.S. Individual Tax Return, Form 1040, for the calendar year 2008.

\* \* \*

  39. On or about December 15, 2008, WOMACK was interviewed by two FBI Special Agents. During that interview, WOMACK knowingly made numerous false and fraudulent statements …

  40. At the end of the interview with the two FBI Special Agents that took place on or about December 15, 2008, WOMACK was provided a form that stated both that "[t]he Agents listed below introduced themselves to me and told me that they are conducting a federal criminal investigation regarding bank fraud, wire fraud and/or tax evasion" and that "I have been advised that it is a separate Federal felony to knowingly and willfully make any materially false, fictitious, or fraudulent statement or representation during this interview." WOMACK initialed beside both of those statements, signed the form, and dated it 956 am 12/15/08." Later that day, and to conceal her prior false and fraudulent statements to the agents, WOMACK made a handwritten annotation to the form stating "regarding Brandy Wheeler VCW 12/15/08" and caused the annotated form to be transmitted to the agents at their office in Kansas City, Missouri.

  41. On or about May 19, 2009, in Kansas City, Missouri, WOMACK testified under oath in a deposition by a trial attorney for the United States Department of Justice, Tax Division, regarding a lawsuit under the internal revenue laws of the United States then pending in the Western District of Missouri that sought to enjoin a third party from providing tax advice. During that deposition, WOMACK knowingly made numerous false and fraudulent statements ….

\* \* \*

  All in violation of 26 U.S.C. § 7212(a).

## COUNTS TWO through TEN

  45. The factual allegations in paragraph 1 through 28 and 31 through 44

4

are incorporated herein by reference.

46. On or about May 9 [sic], 2009, in Kansas City, in the Western District of Missouri, the defendant VERNA CHERYL WOMACK, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Department of the Treasury and the United States Department of Justice, did voluntarily and intentionally make the false and fraudulent statements of material fact corresponding to each count below, while knowing those statements to be false and fraudulent at the time she made them. …

2     WOMACK falsely and fraudulently stated that she did not know when JoJoDi was started, when she knew that she organized and caused to be organized JoJoDi in or about 1997.

3     WOMACK falsely and fraudulently stated that she did not know why JoJoDi was located in the Cayman Islands, when she knew that she organized and caused to be organized JoJoDi to perform the business function previously performed by MFC without MFC's duties to file United States tax returns.

4     WOMACK falsely and fraudulently stated that she did not know who owned JoJoDi and that it was owned by a group of investors, when she knew that there were no such investors, that JoJoDi was owned by the Emerald Star Trust, that she created and caused to be created that trust, and that she was a secondary enforcer of that trust.

5     WOMACK falsely and fraudulently stated that she did not have an ownership interest in DAR Holding and that she did not know who owned DAR Holding, when she knew that she organized and caused to be organized DAR Holding and that she exercised ownership, custody and control over DAR Holding and its assets.

6     WOMACK falsely and fraudulently stated that she did not know how long DAR Holding had been in existence, when she knew that she organized and caused to be organized DAR Holding in or about 1996.

7     WOMACK falsely and fraudulently stated that she did not own a condominium in the Cayman Islands and only rented one, when she knew that, through the nominee company DAR Holding, she owned and maintained full custody and control over her condominium at The Sovereign, George Town, Grand Cayman, Cayman Islands.

8     WOMACK falsely and fraudulently stated that Lucy Limited was owned by another group of investors, that she did not have an ownership interest in Lucy Limited, and that she had never invested in Lucy Limited, when she knew that

5

there were no such investors, that she organized and caused to be organized Lucy Limited, and that she exercised ownership, custody and control over Lucy Limited and its assets.

  9  WOMACK falsely and fraudulently stated that Lucy Limited's investors paid her to purchase the wine, manage the wine, and properly contain the wine, when she knew that there were no such investors, that she organized and caused to be organized Lucy Limited, and that she exercised ownership, custody and control over Lucy Limited and its assets.

  10  WOMACK falsely and fraudulently stated that Lucy Limited's investors paid her a percentage for managing the auction of the wine, when she knew that there were no such investors, that she organized and caused to be organized Lucy Limited, and that she exercised ownership, custody and control over Lucy Limited and its assets.

  All in violation of 18 U.S.C. § 1001(a)(2).

(Indictment (doc #1))

The statutes under which defendant Womack has been charged, 26 U.S.C. § 7212(a) and 18 U.S.C. § 1001(a)(2), provide in part:

### § 7212. Attempts to interfere with administration of internal revenue laws

  **(a)**  **Corrupt or forcible interference.** –Whoever corruptly … endeavors to … impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly … obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both ….

26 U.S.C. § 7212(a).

### § 1001. Statement or entries generally

  (a)  Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--

    \* \* \*

    (2)  makes any materially false, fictitious, or fraudulent

> statement or representation …
>
> * * *
>
> shall be fined under this title, imprisoned not more than 5 years … or both.

18 U.S.C. § 1001(a)(2).

## II. DISCUSSION

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation …." This Constitutional requirement is implemented by Rule 7(c)(1) of the Federal Rules of Criminal Procedure which specifies that "[t]he indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged …." An indictment is sufficient if it: (1) contains the essential elements of the offenses charged; (2) fairly informs the defendant of the charges against which he must defend; and (3) enables the defendant to plead an acquittal or conviction in bar of future prosecution for the same offenses. See Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998); United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993), cert. denied, 513 U.S. 831 (1994). The sufficiency of a criminal indictment is determined from its face. There is no summary judgment procedure in criminal cases nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. See United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995); United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992). Indictments are normally sufficient unless no reasonable construction can be said to charge the offense. See O'Hagan, 139 F.3d at 651; United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993).

7

Defendant Womack contends that the indictment must be dismissed because:

[Count One] fails to state an offense because 26 U.S.C. § 7212(a) can be used only to prosecute corruptly interfering with administration of Title 26 of the United States Code—that is, the Internal Revenue Code ("IRC")—but the conduct alleged, if true, would only impede administration of the Bank Secrecy Act, not the IRC. Other allegations of "corrupt" conduct are not "corrupt" within the meaning of the statute.

The remaining nine counts of the Indictment (Counts 2 through 10) charge Ms. Womack with making false statements during a deposition conducted by a trial attorney for the U.S. Department of Justice, Tax Division, in violation of 18 U.S.C. § 1001(a)(2). …

Each of these Counts fails to state an offense for one or more reasons. First, the undisputed facts establish the literal truth of the statements attributed to Ms. Womack in Counts 3, 4, 5, 7, 8, 9, and 10. In these Counts, the Indictment generally alleges that Ms. Womack falsely told government officials that she had no ownership interest in certain companies in the Cayman Islands, which is true because, as the Indictment itself states, 100% of the issued and outstanding shares of each company is owned by a trust validly organized under Cayman Island law.

Second, the allegedly false statements described in Counts 2 and 6, where the government charges that Ms. Womack falsely stated she could not remember when certain Cayman Island companies were organized, are immaterial as a matter of law because Ms. Womack told the government rough, accurate approximations of the timeframe during which they were organized. These counts thus likewise fail to state an offense.

Third, Counts 9 and 10 are multiplicitous and threaten to violate the Double Jeopardy Clause if not dismissed because they allege the same false statement, and demand the same proof of falsity, as that alleged in Count 8. These counts are thus defective and must be dismissed.

(Motion to Dismiss (docs #72 and #73) at 2-3)

A.     <u>Count One</u>

26 U.S.C. § 7212(a), the statute under which defendant Womack is charged in Count One provides: "Whoever … in any … way corruptly … obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined … or

8

imprisoned … or both." As set forth above, the Introduction section of the Indictment, which is incorporated into Count One, charges in part:

> 1. Beginning in or about 1996, and continuing to the date of this indictment, Defendant VERNA CHERYL WOMACK … corruptly endeavored, in the Western District of Missouri, and elsewhere, to obstruct and impede the due administration of the internal revenue laws of the United States. As part of her endeavors, WOMACK opened a series of bank accounts and organized a series of nominee companies and trusts in the Cayman Islands to conceal a portion of her income from the IRS. … As part of her corrupt endeavors, WOMACK repeatedly failed, year after year, to report her financial interests in her nominee companies and trusts to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.
>
> 2. As part of her corrupt endeavors, WOMACK established at least 19 accounts at the Bank of Butterfield and Caledonian Bank in the Cayman Islands in her own name, and in the name of her various nominee companies and trusts. For at least the calendar years 2005 through 2008, WOMACK failed to report her financial interest and signatory authority over all of the financial accounts in the Cayman Islands that she had an interest in or signatory authority over to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.
>
> 3. For the calendar years 2005 through 2008, WOMACK maintained balances of between $40,964.00 and $173,541.08 in one of the Bank of Butterfield accounts, an interest-bearing account that she maintained in her own name. … Despite her custody and control of that account, WOMACK repeatedly failed, year after year, to report her financial interests in her Bank of Butterfield interest-bearing account to the IRS despite the multiple legal requirements that, as a United States citizen, she do so.
>
> 4. WOMACK's corrupt endeavors to conceal income from the IRS included the use of a nominee company in the Cayman Islands called Lucy Limited, for which she established at least two separate accounts at the Bank of Butterfield. ... She did not disclose her control of Lucy Limited or the existence of its bank account to the IRS, and she did not properly report the income she derived from that sale – at least $851,188.00 – on her individual tax return as required by the internal revenue laws of the United States.
>
> 5. Further obstructing and impeding the administration of the internal revenue laws of the United States, WOMACK repeatedly lied to employees of the United States about her interests in Cayman Island businesses, trusts and financial accounts. …

> 6. The United States alleges that during the period charged in this indictment, WOMACK's schemes to interfere with the administration of the internal revenue laws, including but not limited to her corrupt endeavors using Cayman Island nominees and financial accounts alleged in this indictment, caused a total tax loss in excess of $7,000,000.00.

(Indictment (doc #1) at 1-3) Count One then provides: "Beginning in or about 1996, and continuing to the date of this indictment, … the defendant did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws of the United States by the following conduct: [listing of specific conduct which was more generally described in the above Introduction section]." (Id. at 10-18)

The Court finds that Count One of the instant indictment tracks the statutory language of 26 U.S.C. § 7212(a) and contains all the essential elements of a section 7212(a) violation. The Court finds no merit to defendant's argument that she can allegedly lie on her individual tax returns and to government agents by failing to report and/or acknowledge interests in foreign financial accounts and not be said to be impeding administration of the Internal Revenue Code, but rather to be only impeding administration of the Bank Secrecy Act. Nor does the Court find merit in defendant's argument that the indictment does not allege conduct that is "'corrupt'—that is conduct undertaken in 'an effort to secure an unlawful advantage or benefit.'" (Motion to Dismiss (docs #72 and 73) at 12) The indictment alleges that defendant's schemes to interfere with the administration of the internal revenue laws caused a tax loss in excess of $7,000.000.00, taxes that allegedly would have been owed by defendant and collected under the Internal Revenue Code, but for defendant's schemes to obstruct and impede.

Defendant's arguments that the alleged conduct was not "corrupt" would require the Court to look outside the indictment and/or make a pre-trial determination of the evidence.

Whether the government will introduce sufficient evidence to prove its allegations cannot be resolved prior to the government's presentation of its case to the jury. Count One of the indictment is sufficient.

    B.    <u>Counts Two Through Ten</u>

18 U.S.C. § 1001(a)(2), the statute under which defendant Womack is charged in Counts Two through Ten provides: "whoever, in any matter within the jurisdiction of the … Government of the United States, knowingly and willfully … makes any materially false, fictitious, or fraudulent statement or representation … shall be fined under this title, imprisoned not more than 5 years … or both." As set forth above, Counts Two through Ten charge:

> 46. On or about May 9 [sic], 2009, in Kansas City, in the Western District of Missouri, the defendant VERNA CHERYL WOMACK, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Department of the Treasury and the United States Department of Justice, did voluntarily and intentionally make the false and fraudulent statements of material fact corresponding to each count below, while knowing those statements to be false and fraudulent at the time she made them.

(Indictment (doc #1) at 19) The context in which the alleged false and fraudulent statements were made was further described in Count One (which paragraph was incorporated into Counts Two through Ten):

> 41. On or about May 19, 2009, in Kansas City, Missouri, WOMACK testified under oath in a deposition by a trial attorney for the United States Department of Justice, Tax Division, regarding a lawsuit under the internal revenue laws of the United States then pending in the Western District of Missouri that sought to enjoin a third party from providing tax advice. During that deposition, WOMACK knowingly made numerous false and fraudulent statements ….

(Indictment (doc #1) at 15)

To find a violation of 18 U.S.C. § 1001(a)(2), the Eighth Circuit's model jury instructions

11

require that the defendant (1) knowingly and intentionally made the statement; (2) the statement was false or fraudulent; (3) the statement concerned a material fact; (4) the statement was made about a matter within the jurisdiction of a federal agency; and (5) the defendant knew it was untrue when she made the statement. See Eighth Circuit Model Criminal Jury Instruction 6.18.1001B. The Court finds that Counts Two through Ten of the instant indictment track the statutory language of 18 U.S.C. § 1001(a)(2) and contain all the essential elements of a section 1001(a)(2) violation.

The Court finds no merit in defendant's argument that some of defendant's statements are literally true because this argument requires the Court to look outside the indictment and/or make a pre-trial determination of the evidence. Likewise, the Court finds no merit in defendant's argument that some of defendant's statements are immaterial. As set forth by the Eighth Circuit Court of Appeals in United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001), "so long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence.'" Finally, the Court finds no merit in defendant's argument that Counts 9 and 10 must be dismissed as multiplicitous because Counts 9 and 10 do not merely allege a repetition of the alleged false statement in Count 8. Rather, Count 9 references defendant's statement that Lucy Limited's investors paid her to purchase, manage and properly contain wine and Count 10 references defendant's statement that Lucy Limited's investors paid her for managing the auction of wine, while Count 8 references only defendant's statement as to the ownership of Lucy Limited. Since Counts 9 and 10 will require proof of facts that Count 8 does not, there is no multiplicity. See United States v. Segall, 833 F.2d 144, 146 (9th Cir. 1987)("each nonidentical false statement made … may be

Case 4:13-cr-00441-GAF   Document 139   Filed 11/25/15   Page 12 of 13

charged as a separate violation of section 1001.") Whether the government will introduce sufficient evidence to prove its allegations cannot be resolved prior to the government's presentation of its case to the jury. Counts Two through Ten of the indictment are sufficient.

### III. CONCLUSION

For the foregoing reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant Verna Cheryl Womack's Motion to Dismiss the Indictment Pursuant to Fed. R. Crim. P. 12(b)(3)(B) (docs #72 and #73).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

　　　　　　　　　　　　　　　　　　　　　*/s/ Sarah W. Hays*
　　　　　　　　　　　　　　　　　　　　SARAH W. HAYS
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE