IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-00441-01-CR-W-GAF |
| ) | |
| VERNA CHERYL WOMACK, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendant Verna Cheryl Womack's Motion to Dismiss the Indictment for Conduct in Violation of the Due Process Clause (docs #75 and #76).[1] For the reasons set forth below, it is recommended that defendant's motion to dismiss be denied.

I. INTRODUCTION

"The level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." United States v. Pardue, 983 F.2d 843, 847 (8th Cir.)(per curiam)(citation and internal quotations omitted), cert. denied, 509 U.S. 925 (1993). The defense is reserved for a "narrow band of the most intolerable government conduct." Id. In United States v. Bugh, 701 F.3d 888 (8th Cir. 2012), cert. denied, 133 S.Ct. 2012 (2013), the Eighth Circuit Court of Appeals provided the following explanation:

Law enforcement agents' conduct is so outrageous that due process principles bar

---

[1] Doc #75 is a redacted version of the motion and doc #76 is an unredacted version filed under seal. Defendant redacted portions of the motion at the request of the government until ruling by the Court on the United States' Ex Parte Motions for Protective Order (docs #41 and #50). On March 31, 2015, the Court granted the motions for protective order to the extent that the subject TIEA applications and related correspondence shall not be disclosed to any third parties outside of this criminal action and denied the motions to the extent that they request that any pleading which references the content of the subject documents be filed under seal. (Doc #84)

the Government from using the judicial process to obtain a conviction only when agents' conduct violates "that fundamental fairness, shocking the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." United States v. Russell, 411 U.S. 423, 432 … (1973)(internal quotation marks omitted).

701 F.3d at 894. Aggressive and persistent government conduct does not equate to outrageous conduct that shocks the conscience. Id.

Defendant Womack argues that the indictment should be dismissed because of these alleged violations of due process:

- Searching for and seizing documents, without a warrant, off of electronic evidence stolen by Defendant Brandy Wheeler, a former employee of Ms. Womack's, who was convicted of felony bank fraud for embezzling more than one million dollars from Ms. Womack; and then subsequently utilizing the tainted evidence to execute a Tax Information Exchange Agreement on the Cayman Islands, and obtain statements from Ms. Womack.

- Evidence and statements the government obtained in violation of statutory rights conferred on Ms. Womack by virtue of her statutory designation by the government as the crime victim under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.

- Illegally and improperly utilizing civil IRS and DOJ Civil Tax attorneys to aid in the criminal investigation; and compelling Ms. Womack to testify in the district to obtain venue[2] and in violation of her Fifth Amendment rights, despite a valid Protective Order in a civil case prohibiting their use outside of that case.

- Abuse of the Tax Information Exchange Agreement (TIEA) with the Cayman Islands; and detention of a resident of the Cayman Islands in circumcision of the TIEA.

- The government's unlawful disclosures of Ms. Womack's tax return information in violation of 26 U.S.C. § 6103(a).

- The government's unwarranted *ex parte* communications with the Court.

- Withholding exculpatory Brady material.[3]

---

[2]Defendant withdrew the manufactured venue argument at the hearing held on July 24, 2015. (Tr. at VIII-3 to VIII-4)
[3]This alleged violation of due process was made in defendant Womack's reply brief (doc #96).

2

(Defendant Verna Cheryl Womack's Motion to Dismiss the Indictment for Conduct in Violation of the Due Process Clause (docs #75 and #76) at 4)  The Court will address each of defendant's claims.[4]

## II. DISCUSSION

A.   The Electronic Evidence

Defendant Womack filed a Motion to Suppress Illegally Searched and Seized Electronic Evidence (doc #67) which is the subject of a separate Report and Recommendation.  In that separate Report and Recommendation, the Court recommends the denial of defendant's motion to suppress electronic evidence.  Thus, given the Court's recommendation that there was no unconstitutional search and seizure of electronic evidence, there can be no due process violation in the government's searching for and seizing of documents from the electronic evidence and the subsequent use made of those documents.

B.   The Crime Victims' Rights Act

The Crime Victims' Rights Act, provides in part:

(a) **Rights of crime victims.**--A crime victim has the following rights:

> (**1**) The right to be reasonably protected from the accused.
>
> (**2**) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
>
> (**3**) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by

---

[4]Many of the claims of due process violations already have been addressed by the Court in other Reports and Recommendations regarding defendant's various motions to suppress.  The Court will not repeat the Findings of Fact which relate to those claims, but will make Findings of Fact with respect to claims which have not otherwise been addressed.

3

the victim would be materially altered if the victim heard other testimony at that proceeding.

**(4)** The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

**(5)** The reasonable right to confer with the attorney for the Government in the case.

**(6)** The right to full and timely restitution as provided in law.

**(7)** The right to proceedings free from unreasonable delay.

**(8)** The right to be treated with fairness and with respect for the victim's dignity and privacy.

**(9)** The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement.

**(10)** The right to be informed of the rights under this section and the services described in section 503(c) of the Victims' Rights and Restitution Act of 1990 (42 U.S.C. 10607(c)) and provided contact information for the Office of the Victims' Rights Ombudsman of the Department of Justice.

**(b) Rights afforded.**—

**(1) In general.**--In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a). Before making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding. The reasons for any decision denying relief under this chapter shall be clearly stated on the record.

* * *

**(c) Best efforts to accord rights.**—

**(1) Government.**--Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a).

* * *

**(d) Enforcement and limitations.**--

4

> * * *
>
> **(6) No cause of action.**--Nothing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages. Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.

18 U.S.C. § 3771.

In support of her motion to dismiss, defendant Womack claims that rather than treat her with "fairness," "the government actually used Ms. Womack's victim status as a ruse to interview Ms. Womack [on December 15, 2008] without a lawyer present in the hopes that she would incriminate herself."  (Motion to Dismiss the Indictment for Conduct in Violation of the Due Process Clause (docs #75 and #76) at 8)   Defendant Womack filed a Motion to Suppress Illegally Obtained Evidence of Her Statements at the December 2008 Interview and Her May 2009 Civil Deposition in U.S. v. Davison (doc #71) which is the subject of a separate Report and Recommendation.  In that separate Report and Recommendation, the Court recommends the granting of defendant's motion to suppress as it relates to statements made by defendant at the December 15, 2008 interview.  The Court found that Special Agent Witt affirmatively and intentionally misled defendant Womack to obtain the December 15, 2008 interview in violation of defendant's due process rights.

Other than the December 15, 2008 interview, defendant Womack claims that her victim rights have been abused in that Brandy Wheeler is only required to pay Womack $150.00 per month in restitution, that the government has made no effort to obtain or liquidate the assets Wheeler purchased with Womack's money, and that Womack's civil tax case relating to her 2001 through 2004 tax years has been put on hold.  (Motion to Dismiss the Indictment for Conduct in

5

Violation of the Due Process Clause (docs #75 and #76) at 7 n.7 and 8) Defendant Womack argues for dismissal to counter the current message to crime victims "that cooperating with the government will not only hinder the administration of justice in their own circumstances, but could result in the government surreptitiously abusing the CVRA to *bring charges against* cooperative victims." (Id. at 8)

The Court first notes that the Honorable Fernando J. Gaitan, Jr., found that V. Cheryl Womack was not the "victim" for purposes of the Crime Victim's Rights Act in the criminal matter of United States v. Brandy M. Wheeler; VCW Holding Company, LLC was the "victim." (See Order (doc #29) in Case No. 08-00216-01-CR-W-FJG) Further, Judge Gaitan found defendant Wheeler's ordered restitution was not in violation of VCW Holding Company, LLC's victim rights. (Id.) Womack's motion for reconsideration of Judge Gaitan's Order was denied. (See Order (doc #34) in Case No. 08-00216-01-CR-W-FJG) This Court will not address further defendant Womack's claims of victim's rights violations with respect to restitution. With respect to the government's decision to put any civil tax cases against defendant Womack on hold pending the resolution of this criminal prosecution, the Court finds that this decision does not appear unreasonable, let alone a violation of defendant's due process. Finally, the Court declines defendant's invitation to dismiss the charges against her to counter the purported message to other crime victims. The Court has recommended the suppression of defendant's statements made at the December 15, 2008 interview. This appears to be a sufficient sanction for a violation of defendant Womack's rights.

    C.    <u>Civil Investigation of Allen Davison</u>

As set forth above, defendant Womack filed a Motion to Suppress Illegally Obtained Evidence of Her Statements at the December 2008 Interview and Her May 2009 Civil Deposition

in U.S. v. Davison (doc #71) which is the subject of a separate Report and Recommendation. In that separate Report and Recommendation, the Court recommends the denial of defendant's motion to suppress as it relates to statements made by defendant in the civil investigation of Allen Davison. The Court found that the attorneys handling the Davison civil injunction case did not know that Womack was under criminal tax investigation when she was deposed and did not affirmatively mislead Womack about a criminal investigation in order to obtain information from her or use her deposition in the Davison case to develop evidence for the criminal case. With respect to the protective order, the Court found that Womack's deposition testimony was never designated "Confidential" and, thus, was not subject to the protective order. Thus, given the Court's recommendation, there can be no due process violation with respect to defendant's involvement in the civil investigation of Allen Davison.

D. The Tax Information Exchange Agreement (TIEA)

Defendant Womack filed a Motion to Suppress Evidence Obtained Pursuant to the Tax Information Exchange Agreement (docs #69 and #70) which is the subject of a separate Report and Recommendation. In that separate Report and Recommendation, the Court recommends the denial of defendant's motion to suppress as it found no violations of the TIEAs with respect to document requests. Given the Court's recommendation, there can be no due process violation with respect to the TIEA document requests.

However, defendant's due process argument goes beyond the issues addressed in the separate Report and Recommendation in that defendant claims her due process rights were violated by the detention of Stephen Gray, a resident of the Cayman Islands, in circumcision of the TIEA. The Court makes the following Findings of Fact with respect to this issue:

1. On October 8, 2010, Revenue Service Representative Raul Pertierra sent a request for documents under the TIEA to the Cayman Islands Competent Authority. (Tr. at II-47; Government's Ex. 58) The purpose of the request was to obtain information from Butterfield Bank (Cayman) Limited; Caledonia Bank, Trust and Fund Services Limited; Walkers Global; and Willis Management Limited regarding Verna Cheryl Womack. (Government's Ex. 58)

2. Stephen Gray is a Director and Vice President of Willis Management (Cayman), Ltd., a licensed Cayman Islands Insurance Manager. (Government's Ex. 188) Mr. Gray provided records in connection with a Notice to Produce Information issued by the Tax Information Authority on January 28, 2011 to Willis Management (Cayman), Ltd. (Government's Ex. 188) These records related to JoJoDi Insurance Company, Ltd., DAR Holdings, Lucy Limited, Future Strategies Consulting, Tenth Trust, Eleventh Trust, Twelfth Trust, Thirteenth Trust and Emerald Star Trust. (Government's Ex. 188)

3. On March 15, 2011, the Cayman Islands Competent Authority provided the affidavits and documents received pursuant to the Notices to Produce Information served on Caledonian Bank Limited, Willis Management (Cayman) Ltd. and Walkers Corporate Services Limited to the United States Competent Authority. (Tr. at II-54; Government's Ex. 65)

4. In 2012, Mr. Pertierra was contacted about a second request in this case. (Tr. at II-54 to II-55) Special Agent Joe Schmidt requested assistance with interviews of people who live in the Cayman Islands. (Tr. at II-55) A TIEA request for voluntary interviews was made on May 2, 2012. (Government's Ex. 67) One of the persons from whom an interview was sought was Stephen Gray. (Government's Ex. 67)

5. Special Agent Schmidt travelled to the Cayman Islands to conduct interviews on May 7 and 8, 2012. (Tr. at II-57 and VII-35; Defendant's Ex. 26) Special Agent Schmidt testified that he had been told that Stephen Gray and others would be willing to speak with him in voluntary interviews. (Tr. at VII-35) The day of the interviews, Special Agent Schmidt was advised that the interviews would not take place as the witnesses did not consent to be interviewed. (Tr. at II-57 and VII-35; Defendant's Ex. 26) The Cayman Islands Competent Authority agreed to leave the request open. (Tr. at II-58) The Cayman Islands Competent Authority proposed that written questions could be served on the witnesses under a notice to produce information. (Tr. at II-58 and VII-36) The United States ultimately decided not to serve those questions. (Tr. at II-58)

6. Special Agent Schmidt testified that he wanted to ask Stephen Gray about who had control and ownership of those Cayman Islands entities for which Gray had provided documents to the Tax Information Authority. (Tr. at VII-34 to VII-36) Special Agent Schmidt wanted spontaneous answers to the questions, not

8

something where people could sit and review the questions. (Tr. at VII-36)

7. Special Agent Schmidt received information that Stephen Gray was going to have a five-hour layover in the Miami Airport on a flight from Cayman to Toronto. (Tr. at VII-36) Special Agent Schmidt reached out to an agent in Miami and asked him to contact Customs and Border Patrol ("CBP") to try and set up a witness interview. (Tr. at VII-37) Special Agent Schmidt testified that CBP has authority to stop and speak with people as they come into the country. (Tr. at VII-37) On May 20, 2013, Special Agent Schmidt and Agent Skinner went to the Miama Airport. (Tr. at VII-38) Special Agent Schmidt and Agent Skinner met with CBP officers and then went to an interview room and waited for Mr. Gray to get into the country. (Tr. at VII-38) After Mr. Gray unboarded from the plane, CBP officers asked him to come back and speak with the agents. (Tr. at VII-38) When Mr. Gray entered the interview room, Special Agent Schmidt asked him if he would be willing to answer some questions. (Tr. at VII-38) Special Agent Schmidt testified that Mr. Gray seemed mildly annoyed as he said that he had been going to try and catch an earlier flight to Toronto. (Tr. at VII-38) Special Agent Schmidt told Mr. Gray that if he wanted to go try and catch that flight, he could, but asked him to take down Special Agent Schmidt's information so that they could do the interview at another time. (Tr. at VII-38) Mr. Gray said that he was no longer going to be able to catch the earlier flight. (Tr. at VII-38)

8. Special Agent Schmidt testified that Stephen Gray was free to leave at any time. (Tr. at VII-39) Mr. Gray was in no way a target himself. (Tr. at VII-39) Special Agent Schmidt testified that Mr. Gray did not appear to be reluctant to speak, rather he was very friendly. (Tr. at VII-39) Mr. Gray described Willis' relationship with Cheryl Womack. (Tr. at VII-39) Special Agent Schmidt and Mr. Gray discussed entities that are a part of this case. (Tr. at VII-39) Mr. Gray never stated that he wanted more time to think about his answers or that he wanted to have a lawyer present. (Tr. at VII-40) Special Agent Schmidt did not tell Mr. Gray that he had to talk to him. (Tr. at VII-41) Mr. Gray never said that he did not want to talk to Special Agent Schmidt. (Tr. at VII-41)

9. Special Agent Schmidt testified that he was aware that it would be improper to try to interview Stephen Gray in the Cayman Islands. (Tr. at VII-60) However, Special Agent Schmidt testified that he was not aware of any way that the TIEA was violated in asking Stephen Gray questions while Gray was in the United States. (Tr. at VII-41) Mr. Pertierra testified that there is nothing in the TIEAs that would prohibit a person from being interviewed in the United States after they have declined to be interviewed in their host country. (Tr. at II-111)

While defendant Womack would have the Court find that border patrol officers detained and interrogated Mr. Gray in violation of federal law (see Motion to Dismiss the Indictment for

9

Conduct in Violation of the Due Process Clause (docs #75 and #76) at 18), no evidence was presented at the hearing to support these allegations. Defendant would also have the Court find that the Cayman Tax Competent Authority expressly prohibited the interview of Mr. Gray (id.), despite again the lack of evidence to support this allegation. Finally, defendant would have the Court find that Special Agent Schmidt violated federal law by making disclosures of information to Mr. Gray. (Id.) Again, no evidence was presented at the hearing to support this allegation.

No evidence or case law has been presented to indicate that the TIEA was violated by Special Agent Schmidt's interview of Stephen Gray while Mr. Gray was present in the United States. No case law has been presented that would indicate that defendant Womack's due process rights were violated by the interview. While Special Agent Schmidt's actions may have been aggressive, the Court does not find them to be outrageous conduct that shocks the conscience. There is no basis for a dismissal based on a due process violation with respect to the TIEAs.

### E.  Disclosure of Defendant's Tax Return Information

Defendant Womack claims that IRS and FBI agents made numerous disclosures of her and her family members' tax returns and return information to third parties. (Motion to Dismiss the Indictment for Conduct in Violation of the Due Process Clause (docs #75 and #76) at 20) Specifically, defendant cites the following disclosures as violations of her due process rights:

- On March 31, 2009, a civil attorney for the IRS, David Flassing, sent to defendant Wheeler a disk containing a set of approximately 60 documents he obtained in a case pending in Tax Court against VCW Holdings and one of its subsidiaries, CARD Aeronautics, LLC. The documents were sensitive and confidential as the disk was encrypted and password protected. Attorney Flassing provided Defendant Wheeler with the password the previous day so that she could view the files on the disk. Mr. Flassing asked her to "authenticate" the documents on the disk or indicate whether they were "not familiar" to her, indicating that he had no knowledge as to whether Defendant Wheeler had ever previously reviewed or accessed these documents.

- Mr. Flassing sent another package of materials to Defendant Wheeler on or about April 10, 2009. That package included tax returns for Ms. Womack's company, VCW, for other companies owned by Ms. Womack or VCW called Mysis, Inc., CARD Aeronautics, R&A Properties, and Ms. Womack's own personal returns. Wheeler kept the documents.

- On July 30, 2012, the local IRS case agent Joseph Schmidt sent to Defendant Wheeler return information for both Ms. Womack and her husband, including their respective social security numbers, information about specific tax deductions and income, their annual purchases and sales, retirement plan contributions, and other information about itemization of potential deductions from federal income tax.

- In December 2012, IRS Agent Schmidt asked Defendant Wheeler to come [to] his office so that she could review tax returns in person. She did so on January 2, 2013 and was interviewed by both IRS Agent Schmidt and IRS Agent Jaime Seematter. During the interview, she was shown, at a minimum, tax returns and return information for companies called PAS, and Mysis, Inc., as well as Ms. Womack's personal returns.

- [G]overnment agents unlawfully disclosed that Ms. Womack was under criminal investigation to at least 18 identified witnesses in the course of their investigation. In just one example, on July 29, 2013, a business associate of Ms. Womack's named Mario Chalmers was hosing his annual charity golf tournament at the Alvamar Golf Club in Lawrence, Kansas. Local IRS Agent Schmidt approached Mr. Chalmers and his father, Ronnie Chalmers, at the golf course, and disclosed that he wanted to talk to them about Ms. Womack, whom Agent Schmidt disclosed was under criminal investigation. Ronnie Chalmers informed Agent Schmidt that a phone interview at a later date would be more appropriate, as he and his son were in the middle of hosting a charity event. On August 9, 2013, Agent Schmidt and Tax Fraud Investigative Assistant, Heather Dutzel, placed a phone call to Ronnie Chalmers, and again disclosed that Womack was the target of a criminal investigation.

(Id. at 21-23)

The government disagrees that there has been an improper disclosure of defendant Womack's tax return information. (Response in Opposition to Defendant's Pretrial Motion to Dismiss on Due Process Grounds (doc #83) at 7) However, the government argues that even if one assumes that there was an improper disclosure, that conduct does not warrant a dismissal of the indictment. (Id. at 7-8)

11

While testimony was taken at the hearings held in this case to suggest that Mr. Flassing and Special Agent Schmidt did provide Brandy Wheeler with return information relating to defendant Womack,[5] the Court does not find it necessary to ascertain whether or not these disclosures violated 26 U.S.C. § 6103.[6] The only case cited by defendant Womack in support of her argument is <u>Snider v. United States</u>, 468 F.3d 500 (8th Cir. 2006), which involved a civil action brought by taxpayers against the IRS for the illegal disclosure of return information wherein the taxpayers were found to be entitled to an award of damages.[7] No case law has been presented to the Court which would suggest that a criminal defendant is entitled to a dismissal of a criminal action based on a due process violation relating to the disclosure of return information to a third party. The fact that IRS agents and attorneys looked to Brandy Wheeler, the person who had served for years as VCW Holding's controller, who described her duties to Womack as "anything and everything related to Cheryl Womack's personal finances, all of the businesses that she would invest in, … anything pretty much that would fall underneath a financial umbrella" (Tr. at VI-62) and who was actively cooperating against defendant Womack, to answer questions that they had with respect to Womack's return information for purposes of their investigations, does not appear

---

[5]The Court does not believe that any testimony was presented at the hearings regarding any disclosure to Mario or Ronnie Chalmers.

[6]The Court notes that section 6103(k)(6) does allow for the disclosure of return information for investigative purposes. The statute provides:

> An internal revenue officer or employee … may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. …

[7] 26 U.S.C. § 7431 provides for civil damages for the unauthorized disclosure of return information.

to be outrageous conduct that shocks the conscience of the Court. There is no basis for a dismissal based on a due process violation with respect to the disclosure of defendant's tax return information.

F. Ex Parte Communications

Defendant Womack claims that the government has engaged in due process violations by twice attempting to communicate with the Court ex parte. (Motion to Dismiss the Indictment for Conduct in Violation of the Due Process Clause (docs #75 and #76) at 24) Specifically, defendant cites the following ex parte communications as violations of her due process rights:

- After the government indicted Ms. Womack, on New Year's Eve 2013, after the U.S. Attorney's Office was closed, the U.S. Attorney's Office Criminal Chief sent alleged information about Ms. Womack in an e-mail to the U.S. Magistrate judge who had presided over her arraignment and bond hearing. After returning to the office after the New Year's holiday, the Court immediately forwarded the attempted *ex parte* communication and information supplied to the Court by the government to counsel for Ms. Womack. …

- In another instance, on November 12, 2014, one day after Ms. Womack filed a motion for leave to file a motion to compel the government's TIEA application discovery, unbeknownst to Ms. Womack, the government attempted a second *ex parte* contact with the Court. The government filed an *ex parte* motion for a protective order covering the TIEA application in question. Ms. Womack was not aware that the papers were submitted to the court, as they did not appear even as a sealed entry on ECF. On December 10, 2014, the Court ordered the Court ordered the government to provide Ms. Womack with a copy of the *ex parte* pleading to give Ms. Womack an opportunity to respond to the government's arguments and to file the motion publicly.

(Id. at 24-25)

With respect to the first ex parte communication, the Court notes that the communication consisted of an email which stated: "a news item that may be of interest to you," and attached a news article entitled, "Court bans US businesswoman from Cayman trip." (See doc #14-3) The article referenced a detention decision which had already been made by the Court. No detention

13

issue was still pending before the Court.  While it certainly would have been preferable for the government attorney to have copied defense counsel on the email, this is hardly the sort of conduct that is so outrageous that it shocks the conscience of the Court.  The Court quickly provided the government's ex parte communication to defense counsel.  Defendant suffered no prejudice from the original ex parte nature of the communication.

With respect to the second ex parte communication, the Court notes that the Federal Rules of Criminal Procedure provide:  "The court may permit a party to show good cause [for a protective order] by a written statement that the court will inspect ex parte."  Rule 16(d)(1).  The government filed an Ex Parte Motion for Protective Order (doc #41).  The Court denied the government's request to proceed ex parte and directed the parties to proceed with publicly filed papers on the issue.  There was no due process violation.

G.  Brady Material

In her reply brief, defendant Womack claims that the government withheld two items of exculpatory material from her until March 2015:  (1) an IRS report of an interview of Roland Louie, a Senior Finance Analyst in the Reinsurance Unit for Fireman's Fund Insurance Company, prepared in March 2014, that explains why a reinsurance company would incorporate in the Cayman Islands; and (2) an FBI memorandum of an interview of defendant Womack in 2001 which shows that Womack never intended to hide her relationship with JoJoDi or her business dealings in the Cayman Islands.  (Reply to the Government's Response to Ms. Womack's Motion to Dismiss the Indictment for Conduct in Violation of the Due Process Clause (doc #96) at 14-16)

While the Court does not have the benefit of a government response as this issue was first presented in defendant's reply brief, it is the Court's experience in cases where investigations have spanned several years and involved different agencies that reports are sometimes discovered by

14

government counsel as counsel prepares the case for trial and the government then provides these reports to defense counsel after other materials have been provided. The Court finds that there is nothing outrageous or shocking about the somewhat untimely disclosure to defense counsel of the two instant reports, especially when those reports were provided approximately one year before the actual commencement of the trial. There is no due process violation.

## III. CONCLUSION

Based on the foregoing, the conduct of the government in this case cannot be said to be outrageous or to shock the conscience of the Court, looking both at the cited individual incidents and at the cumulative impact of all the cited incidents. Therefore, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant Verna Cheryl Womack's Motion to Dismiss the Indictment for Conduct in Violation of the Due Process Clause (docs #75 and #76).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                       */s/ Sarah W. Hays*
                                                       SARAH W. HAYS
                                       UNITED STATES MAGISTRATE JUDGE