IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-00441-01-CR-W-GAF |
| | ) | |
| VERNA CHERYL WOMACK, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT VERNA CHERYL WOMACK'S OPPOSITION
TO THE GOVERNMENT'S MOTION IN LIMINE REGARDING
ALLEGATIONS OF GOVERNMENT OR AGENT MISCONDUCT**

COMES NOW Verna Cheryl Womack ("Ms. Womack") by and through her undersigned counsel and offers the following suggestions in opposition to the government's motion in limine regarding allegations of government or agent misconduct (Doc. 174).

The government's motion is correct that their conduct throughout this case has been discussed in several briefs to the Court. It is understandable why the government does not want a jury to hear the problematic parts of its investigation and prosecution of this case. But the government fails to realize that several of its missteps are intertwined with the elements of the offenses charged, as well as integral to the purpose for which the government will admit the evidence obtained through improper means. Thus, it will be essential for the jury to hear much of this testimony so it can properly assess the weight to assign the evidence.

Before discussing the specific legal analysis as to why several of the government's problematic actions are relevant evidence, it is important to recount the actions that occurred in

this case. At several junctures, the government has committed egregious errors, which directly impact the quality and weight of the evidence they plan to admit at trial. These include:

- The government obtained hundreds of thousands of electronic files belonging to Ms. Womack and her company from a now-convicted felon who, at the time she turned them over to the FBI, admitted that she stole the. The government failed to ever obtain a warrant to search the electronic files.

- After possessing the electronic files, the FBI went back to the felon (who embezzled over $1 million from Ms. Womack) and had *her* conduct a search of the files *that she still maintained* to find "useful" documents for them.

- The FBI violated Ms. Womack's rights pursuant to the Crime Victims' Rights Act (CVRA) by allowing the defendant who victimized her to liquidate assets purchased with stolen funds; and continue to maintain and access Ms. Womack's family's personal information.

- The FBI violated Ms. Womack's due process rights by using her status as a victim of crime under the CVRA to interview her with the understanding that she was assisting as a victim and without her counsel present.

- The government improperly used agents from the civil division of the IRS and Department of Justice to aid in a criminal investigation.

- The government misrepresented to Ms. Womack and to her attorney the nature of interviews and a deposition by telling her that she was not a target of any investigation, then used statements from those forums to indict Ms. Womack.

- The government violated this Court's protective order issued in a separate case when it released and used portions of her deposition in that matter.

- The government abused the Tax Information Exchange Agreement ("TIEA") with the Cayman Islands by misleading Cayman Authorities and using it to investigate crimes not subject to the TIEA.

- The government had tens of thousands of potentially privileged communications in its possession for eight years and failed to disclose the existence of those privileged documents to the Court or to Ms. Womack.

- The FBI disseminated full copies of these electronic files to several government agencies for full use and, after they became aware that the files contained extensive privileged material, did nothing to secure the files in other agencies' possession.

- The AUSAs had a "taint team" review several electronic files for the existence of privileged documents in April 2014. The government hid this review from the Court and Ms. Womack and did not allow her any opportunity to challenge their privilege designations.

- The government illegally disclosed Ms. Womack's tax return information in violation of 26 U.S.C. § 6103(a).

- The government improperly engaged in *ex parte* communications with the Court.

To be clear, Ms. Womack does not intend to present evidence regarding each of these actions at trial. Some are unrelated to the evidence itself or to the crimes charged and will therefore not be introduced. But the government mistakenly attempts to lump all of this evidence together—calling it false allegations of "misconduct"—and argues that it should all be excluded. That imprecise evaluation of the evidence, however, misses the mark. Several of these actions by the government directly impact the weight that certain evidence should be given, and they also bear directly on elements of the offenses charged—namely, Ms. Womack's intent. Below, Ms. Womack will provide a few examples of how these specific missteps have independent relevance to the case, illustrating why the Court should deny the government's motion.

## ARGUMENT

As to the main legal point the government advances in its brief, Ms. Womack is in agreement. The government relies extensively on *United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997), to argue that if a defendant is going to raise the allegation of "outrageous government conduct," it must do so in a motion under Rule 12(b)(1) directed to the court and not the jury. In *Regan*, the defendant was trying to put on evidence that the "grand jury investigation was a sham," and that the jury should therefore not convict him. *Id.* Unremarkably, the court found that because the propriety of a grand jury investigation had nothing to do with the

3

elements of the offense charged or the factual support for the claim, the lawfulness of a grand jury inquiry was left to the court.

*Regan* is unsurprising because the impropriety alleged by the defendant had no relation to the actual evidence of the crime charged. If Ms. Womack's allegations were simply an attack that "outrageous government conduct" warranted dismissal of the indictment, then it would be proper for the argument to only be made in advance of trial to the Court.[1] But the improprieties in this case relate directly to the manner in which the evidence was collected. Thus, specific instances of a problematic investigation are directly relevant to the weight that a jury should assign evidence that resulted from improper actions by the government, and they are also relevant to elements of the crimes charged. Due to this independent relevance, Ms. Womack is entitled to present the evidence about the investigation, and the jury is entitled to hear it.

For example, the government will present evidence from the set of electronic files it obtained from Brandy Wheeler, who told the FBI that she stole the files. The jury should certainly be made aware that the corpus of electronic files came exclusively from Wheeler—a felon who had already embezzled $1 million from Ms. Womack, and who had incentives to provide "evidence" that appeared incriminating to the FBI in exchange for a lessened sentence. As the Supreme Court has stated: "When . . . the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud, indications of conscientious police work will enhance probative force and slovenly work will diminish it." *Kyles v. Whitley*, 514 U.S. 419, 446 n.15 (1995). The FBI allowed its cooperating witness, a felon with an axe to grind, to self-select the files it would use against Ms. Womack. Not only did Wheeler select the electronic files and disks she turned over to the government, the

---

[1] Indeed, Ms. Womack filed such a motion in this case. *See* Doc. 75.

4

FBI also turned to her when it wanted particular evidence. The FBI allowed and instructed Wheeler to sift through copies of documents she retained,[2] leaving it to her at every step to decide what was pertinent to their investigation. These facts are highly relevant to the weight of the evidence for the jury to understand that the files were selectively taken by Wheeler.[3]

For another example of relevant investigatory problems, agents of the IRS improperly disclosed Ms. Womack's tax return information in violation of 26 U.S.C. § 6103(a). That statute prohibits disclosure of such information "in any manner" by a government agent. Critically, in *United States v Snider*, 468 F.3d 500 (8th Cir. 2006), the court held that disclosing the identity of an individual and disclosing that they are under criminal tax investigation violated § 6103(a). To be sure, the government has expressed its disdain for this decision, but it is binding and controlling authority. The IRS and FBI agents violated *Snider* and § 6103(a) in spades during the course of this investigation. They provided copies of Ms. Womack's full tax returns to third parties, even providing them to convicted-felon Wheeler. On several occasions, the government sent extensive tax-return information to Wheeler, even providing her the government-issued password protecting some of the most sensitive and confidential files—and allowed her to keep them. Further, IRS Agent Schmidt, when interviewing potential witnesses, did not hesitate to disclose to those individuals that he was there to talk about Ms. Womack who, as he told them, was under criminal investigation. This improper information was routinely disclosed to witnesses interviewed in the investigation.

---

[2] Indeed, as Ms. Womack has already argued, due to the complete breakdown in the chain of custody with respect to this electronic evidence, it should be excluded in full. *See* Doc. 172.

[3] Even if this Court elects not to exclude the evidence in its entirety, the case law is clear that problems with the chain of custody—which are rampant here—are relevant to the weight of the evidence. *See United States v. Brumfield*, 686 F.3d 960, 965 (8th Cir. 2012). Further, Wheeler's admission that she stole these files when she had no right or permission to access them goes directly to her character for truthfulness or untruthfulness. Thus, it is permissible material for cross-examination under Fed. R. Evid. 608(b)(1).

These blatant violations of § 6103(a) are relevant because the improper disclosures by the government to these third-parties surely impacts the witnesses' state of mind when they are answering questions about Ms. Womack and it demonstrates the agents' bias—they insisted on making these improper disclosures even though they received internal training on *Snider*. In fact, Special Agent Schmidt even testified he carries a copy of the Eighth Circuit's decision in *Snider* with him to witness interviews. Thus, the jury should be permitted to weigh the value of those statements (and the impact those statements had on the investigation) based on the context of the conversations. *See United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) ("Details of the investigatory process potentially affected Inspector Morris's credibility and, perhaps more importantly, the weight to be given to evidence produced by his investigation."). Further, as the *Snider* case arose out of improper disclosure from agents in the Kansas City IRS office, agents there, including Schmidt, admit that they are aware of the disclosure prohibitions. Yet, he ignored those requirements, which goes to his character for truthfulness. As such, it is available cross-examination testimony under Fed. R. Evid. 608(b)(1).

The IRS agents' character for truthfulness is further impacted by the affirmative misstatements they included on TIEA applications sent to the Cayman Islands. On its initial TIEA application, the government stated that it was investigating Ms. Womack for criminal tax evasion, even though that was false. Additionally, the IRS misrepresented that it had used all available means available within the United States to secure the necessary information. Finally, and most blatantly, on April 14, 2014—four months after indicting Ms. Womack under 26 U.S.C. § 7212(a) and 18 U.S.C. § 1001—the government submitted an additional TIEA application falsely stating that Ms. Womack was indicated with "one count of evasion of income tax, on her U.S. individual income tax returns, in violation of Title 26, United States Code,

section 7206(1)." These demonstrably false statements are material to the IRS agents' character for truthfulness.

As a final example of the government's problematic investigation that is directly relevant, the government misled Ms. Womack prior to an interview and a deposition about the nature of the proceedings. (Indeed, the magistrate court has already issued a report and recommendation that the interview be suppressed because the FBI agent violated Ms. Womack's due process rights. Doc. 186.) The government indicated to Ms. Womack that she was being interviewed and deposed as a crime victim. The government notified her that she received statutory protection under the Crime Victims' Rights Act (CVRA). Nevertheless, the government turned around and used that status to get her to agree to an interview and a deposition, then charged her with the statements that they obtained. Specifically, the government used—exclusively—statements from this deposition as the basis for its nine separate counts under § 1001, as well as a facts charged in support of Count One. But § 1001 requires the defendant to have committed a violation "knowingly and willfully." Thus, Ms. Womack's intent and state of mind are directly relevant to an element of the crime charged. Indeed, the jury must be permitted to hear the circumstances under which she made these statements and her state of mind when doing so. What Ms. Womack was specifically told about the nature of the deposition is directly relevant to this inquiry.

The government's assertion that evidence of problems in its investigation is more prejudicial than probative is founded in its same incorrect assertion that the claims of misconduct are "tangential to the actual issues in the case." *See* Doc. 174 at 7. As discussed, that is simply not the case. The government's actions in the investigation of this case are directly relevant to the weight of the evidence, to elements of the crimes charged, and to the character for

7

truthfulness of several witnesses.  Moreover, evidence should only be excluded when the probative value of the evidence is *substantially* outweighed by the risk of *unfair* prejudice.  Fed. R. Evid. 403; *see also United States v. Tyerman*, 701 F.3d 552, 563 (8th Cir. 2012) ("Damaging evidence is always prejudicial; the question is whether the evidence is *unfairly* prejudicial."). Here, when the conduct goes directly to relevant issues in the case, there is no unfair prejudice.

Finally the government's requested alternative relief—that Ms. Womack stop any testimony or cross-examination, approach the bench, and inform the Court prior to eliciting testimony of any deficiencies in the investigation of this case—is excessive and unnecessary. There is no reason that this testimony is different from any other testimony, and the government has the ability to object as the testimony is presented.  That burden to raise the issue with the Court should not be shifted to Ms. Womack.

## CONCLUSION

The government's motion in limine should be denied.

Respectfully submitted,

/s/ Cynthia L. Cordes
Cynthia L. Cordes     MO # 66425
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (fax)
cynthia.cordes@huschblackwell.com

/s/ Jeffrey B. Jensen
Jeffrey B. Jensen     MO # 46745
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri  63105
(314) 480-1500
(314) 480-1505 (fax)
jeffrey.jensen@huschblackwell.com

/s/ Lyndsey J. Conrad
Lyndsey J. Conrad     MO # 60264
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
(816) 983-8000
(816) 983-8080 (fax)
lyndsey.conrad@huschblackwell.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of March, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a notice of electronic fling to all persons registered for ECF as of this date.

/s/ Cynthia L. Cordes
Attorney for Defendant